1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                   NORTHERN DISTRICT OF CALIFORNIA

9

10   JENNIFER FRANET,              )
                                   )
11           Plaintiff(s),         )      No. C 02-3787 MJJ (BZ)
                                   )
12      v.                         )      **REPORT AND RECOMMENDATION TO**
                                   )      **GRANT IN PART AND DENY IN**
13   COUNTY OF ALAMEDA SOCIAL      )      **PART PLAINTIFF'S MOTION FOR**
     SERVICES AGENCY, et al.,      )      **ATTORNEYS' FEES**
14                                 )
             Defendant(s).         )
15   _____)

16        On May 25, 2006, the Honorable Martin J. Jenkins referred

17   to me for a report and recommendation plaintiff's motion for

18   attorneys' fees and costs, which came on for hearing July 19,

19   2006.  Plaintiff requests $666,987.39 in attorneys' fees and

20   costs pursuant to 42 U.S.C. § 1988, which provides that the

21   court, in its discretion, may allow the prevailing party in

22   federal civil rights actions reasonable attorneys' fees as

23   part of its costs.[1]  The $666,987.39 figure includes the

24   lodestar amount, which reflects all of the hours plaintiff's

25   attorneys claim they reasonably spent in litigating the case

26   _____

27        [1]    The amount without any enhancements to plaintiff's
     attorneys' hourly rates is $572,416.14.  Plaintiff also
     requests approximately $60,000 in attorneys' fees for work done
28   from the time of the filing of this motion.

                                   1

1    multiplied by a reasonable hourly rate, and an enhancement to

2    their hourly rates to adjust for such factors as the

3    contingent nature of the fee arrangement and the public

4    interest involved.  Defendants claim plaintiff's attorneys'

5    hourly rates are excessive and should not include any

6    enhancement, the hours worked are excessive and improperly

7    include tasks performed for unsuccessful claims and any fees

8    for plaintiff's experts in connection with her motion should

9    be disallowed.

10        "The most useful starting point for determining the

11   amount of a reasonable fee is the number of hours reasonably

12   expended on the litigation multiplied by a reasonable hourly

13   rate."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  As

14   the party seeking attorneys' fees, plaintiff bears the burden

15   of submitting evidence to support the hours worked and rates

16   claimed.  Hensley, 461 U.S. at 433.

17        The purpose of awarding attorneys' fees in civil rights

18   cases is to promote the vigorous enforcement of civil rights

19   laws by assuring that an attorney who wins such a case will

20   receive a reasonable fee.  Corder v. Gates, 947 F.2d 374, 383

21   (9th Cir. 1991).  The starting point for determining a

22   reasonable fee is the hourly rate counsel would have charged

23   had the client been able to pay the attorney's usual rate.

24   Gusman v. Unisys Corp., 986 F.2d 1146, 1149-50 (7th Cir.

25   1993); Columbus Mills, Inc. v. Freeland, 918 F.2d 1575, 1580

26   (11th Cir. 1990)("evidence of a fee structure arrived at by

27   private parties negotiating at arms length is highly

28   persuasive" evidence of prevailing market norms).  Obviously

1    if an attorney can get her usual hourly rate, that factor

2    alone should encourage her and certainly not deter her from

3    taking the case.  Other factors that may discourage her from

4    taking the case, thereby obstructing the enforcement of civil

5    rights laws, can be dealt with through a multiplier or

6    enhancement.  <u>Van Gerwen v. Guarantee Mut. Life Co.</u>, 214 F.3d

7    1041, 1045 (9th Cir. 2000).  At oral argument, Ms. Kaminer

8    stated that had plaintiff been wealthy and able to pay, she

9    would have charged her $350 per hour.  Mr. Pyle said he would

10   have asked for $400 per hour.  These rates are reasonable and

11   in line with prevailing market rates in the San Francisco Bay

12   Area.  Hicks Decl. ¶¶ 20, 21; Pearl Decl. ¶ 8.  Plaintiff's

13   counsel have requested hourly rates of $410 for Ms. Kaminer

14   and $450 for Mr. Pyle, but no reason exists to give more than

15   the hourly rates they would have charged a wealthy plaintiff.[2]

16   Therefore, I recommend Ms. Kaminer and Mr. Pyle receive hourly

17   rates of $350 and $400, respectively, instead of their

18   requested rates.  For similar reasons, I recommend granting

19

20

21        [2]    Plaintiff's reliance on statements in <u>Blum v.</u>
     <u>Stenson</u>, 465 U.S. 886 (1984) and other cases that fees should
22   be based on prevailing market rates for complex federal
     litigation is misplaced.  Plaintiff's counsel are not being
23   awarded a below market hourly rate they customarily charge
     people who are poor and cannot afford to pay prevailing rates.
24   <u>Id.</u> at 895-96.  They are being awarded a rate they would have
     charged a wealthy client.  Likewise, defendants are mistaken
25   when they contend that the prevailing rate should be that
     charged by small firms who do primarily civil rights work.  <u>See</u>
26   <u>Save Our Cumberland Mountains, Inc. v. Hodel</u>, 857 F.2d 1516,
     1520 (D.C. Cir. 1988)(refusing "to create a cap" for the
27   services of private practice public interest attorneys who
     intentionally charge their poorer clients reduced rates, as
28   plaintiff's counsel have declared they do).

1    the requested hourly rates of $350 for David Beauvais,[3] $520

2    for David Hicks and $110 for Mr. Hicks' paralegal, which

3    appear to be the rates they actually charge for their work.

4    Hicks Decl. ¶ 11.  See Miller v. Vicorp Restaurants, Inc.,

5    2006 WL 212021, at * 3 (N.D. Cal. Jan. 11, 2006)(awarding

6    paralegals reasonable rates ranging from $115 to $130 per

7    hour).

8         The parties provided very little briefing on the

9    enhancement issue.  Plaintiff asserts that her attorneys are

10   entitled to an enhancement, not in the form of a multiplier,

11   which is more common, but in the form of a $75 increase to Mr.

12   Pyle's and Ms. Kaminer's hourly rates.  She does not cite any

13   examples which allow this form of enhancement.  Defendants

14   argue that since plaintiff's attorneys are not entitled to the

15   hourly rates they request, they are certainly not entitled to

16   any enhancement.

17        After determining the lodestar amount, a court may

18   enhance or reduce such amount based on an evaluation of a

19   variety of factors not subsumed in the initial calculation of

20   the lodestar.  Van Gerwen, 214 F.3d at 1045-47 (listing

21   factors relevant to the determination of the amount of

22   attorneys' fees:  (1) the time and labor required, (2) the

23   novelty and difficulty of the issues, (3) the skill needed to

24   _____

25        [3]   Defendants challenge Mr. Beauvais' requested rate
     because they contend that calculating values gleaned from an
     attorney lien filed on May 24, 2004 yields a rate of $250.
26   Unfortunately, Mr. Beauvais has not provided his usual rates.
     He seems to have been involved only at the beginning of the
27   case until Ms. Kaminer replaced him.  I am familiar with Mr.
     Beauvais from other matters and recommend he receive the same
28   hourly rate as Ms. Kaminer, $350.

4

1  perform the legal service properly, (4) the preclusion of

2  other employment due to acceptance of the case, (5) the

3  customary fee, (6) time limitations imposed by the client or

4  the circumstances, (7) the amount involved and results

5  obtained, (8) the experience, reputation and ability of the

6  attorneys, (9) the "undesirability" of the case, (10) the

7  nature and length of the relationship with the client, and

8  (11) awards in similar cases).  Considering these factors, I

9  recommend that plaintiff's attorneys receive an enhancement.

10 Plaintiff's case was "difficult" and "undesirable."  To

11 litigate against a social worker in a child endangerment case

12 would faze many attorneys.  Ms. Kaminer initially declined to

13 take it and later had to forgo or postpone work in other cases

14 due to this case.  Kaminer Decl. ¶¶ 10, 28.  The case involved

15 complex immunity issues, and the law regarding social workers

16 and their removal and detention of children was evolving.

17 Plaintiff faced a rigorous defense, as defendants were

18 prepared to fight all claims and continue to vigorously

19 appeal, file and oppose post-trial motions.  Furthermore,

20 plaintiff's attorneys accepted the case knowing that plaintiff

21 was not able to pay fees.  They agreed to advance the costs

22 and take the case on a contingency basis.  Kaminer Decl. ¶ 12.

23 See Fischel v. Equitable Life Assur. Society of U.S., 307 F.3d

24 997, 1008 (9th Cir. 2002)("It is an abuse of discretion to

25 fail to apply a risk multiplier, however, when (1) attorneys

26 take a case with the expectation that they will receive a risk

27 enhancement if they prevail, (2) their hourly rate does not

28 reflect that risk, and (3) there is evidence that the case was

1  risky.")(citation omitted).  Plaintiff's attorneys accepted a

2  difficult, undesirable case with the risk they might not be

3  compensated if plaintiff lost, and obtained a $220,000 verdict

4  against a county employee.  Had plaintiff's attorneys asked

5  for a multiplier, I would have recommended granting one.  If

6  converted to a multiplier, plaintiff's requested enhancement

7  would equal a modest multiplier of approximately 1.2 applied

8  to Mr. Pyle's and Ms. Kaminer's fees.  Therefore, I recommend

9  that plaintiff's request for a $75 hourly enhancement to Ms.

10 Kaminer's and Mr. Pyle's hourly rates be granted.

11    Defendants' arguments that plaintiff's attorneys expended

12 an unreasonable amount of hours are unfounded.  A review of

13 the timesheets for plaintiff's primary attorneys reveals that

14 counsel spent time researching, communicating and preparing in

15 a discovery-intensive case.  They faced motions for summary

16 judgment from all three defendants, and the trial lasted

17 several days.  Ms. Kaminer avers that she did not bill for

18 discussions and brainstorming sessions with Mr. Pyle, and she

19 and Mr. Pyle usually billed only for one attorney's time even

20 if two attorneys participated in the activity.  Plaintiff's

21 attorneys also did not bill for the work performed by one of

22 their then-associates in helping to prepare the opposition to

23 the summary judgment motions.  Kaminer Decl. ¶ 25.  Finally,

24 defendants' attorneys spent as many, if not more, hours as

25 plaintiff's counsel did in litigating the case.  The number of

26 hours plaintiff's attorneys spent is reasonable, and I

27 recommend that they receive fees for all of their claimed

28 hours.

1      Defendants' arguments that plaintiff is improperly

2   including time spent for work on unsuccessful claims are more

3   convincing.  I do not, however, agree with defendants'

4   proposal to cut plaintiff's attorneys' fees by 2/3 since

5   plaintiff did not prevail against two of the three defendants.

6   "[C]ourts may not adopt rigid mathematical formulas tying the

7   lodestar figure to the ratio of defendants remaining at trial

8   to defendants served in the complaint."  Cunningham v. County

9   of Los Angeles, 879 F.2d 481, 485 (9th Cir. 1989).  Courts

10  address two questions when a plaintiff succeeds on only some

11  claims.  The first question focuses on whether "plaintiff

12  fail[ed] to prevail on claims that were unrelated to the

13  claims on which [she] succeeded."  Hensley, 461 U.S. at 434.

14  The second focuses on whether "plaintiff achieve[d] a level of

15  success that makes the hours reasonably expended a

16  satisfactory basis for making a fee award."  Id. (explaining

17  that other factors may affect fee adjustments, including the

18  important factor of the "results obtained" which is

19  "particularly crucial" where a plaintiff is deemed to have

20  prevailed only on some claims).  In the instant case, all of

21  plaintiff's claims arose out of a common set of facts but the

22  claims against the social workers and the County of Alameda

23  Social Services Agency (the "County") were based on different

24  legal theories and different actions, so plaintiff's

25  successful claims were somewhat "unrelated" to her

26  unsuccessful ones.

27      As for the second question, of the three defendants

28  plaintiff sued, Hintzen was dismissed at the summary judgment

7

1   stage several months before trial, on immunity grounds, and

2   the County was dismissed after the conclusion of plaintiff's

3   case-in-chief, before the jury received the case, because of

4   lack of evidence.  Plaintiff prevailed only against Karen

5   Castro but she prevailed on what I perceive to be her

6   principal claim and the award she obtained was substantial.

7   Still, some of the work expended in pursuing the claims

8   against Hintzen and the County was not reasonably expended for

9   the ultimate result achieved.  Requiring one unsuccessful

10  defendant to shoulder plaintiff's attorneys' fees spent

11  unsuccessfully pursuing two other defendants on unrelated

12  claims does not seem fair to Castro.

13      Plaintiff asserts that her attorneys would have had to

14  perform the same tasks and the same amount of work even if she

15  had filed an action against only Castro.  While there is some

16  logic to that in many cases, many of plaintiff's claims were

17  distinct from each other.  The claims against Castro focused

18  on her pre-detention actions and seizure of the children

19  without a warrant; the claims against Hintzen focused on her

20  post-seizure investigatory actions to retain the children; and

21  the County was involved only on <u>Monell</u> grounds.  The

22  timesheets of plaintiff's attorneys often do not differentiate

23  the tasks performed by specific claim and specific defendant.

24  While in some instances this may not have been possible, or

25  might have been unduly time-consuming, there were tasks which

26  should have been easily distinguishable.  For example, much of

27  the work spent opposing the County's motion for summary

28  judgment on <u>Monell</u> grounds would seem separable from much of

8

1    the work done in opposing Castro's motion, which focused on

2    her immunity from suit.  Since the timesheets do not always

3    permit me to segregate the hours spent in pursuit of

4    plaintiff's claims against Hintzen and the County, and her

5    counsel have made no effort to do that, she has not satisfied

6    her burden to produce adequate documentation of her attorneys'

7    fees request.  Hensley, 461 U.S. at 433.  I therefore

8    recommend cutting plaintiff's attorneys' fees by 25% overall.

9    See id. ("Where the documentation of hours is inadequate, the

10   district court may reduce the award accordingly.").  In my

11   experience, this is a reasonable reduction.  Gates v.

12   Deukmejian, 987 F.2d 1392, 1399-1400 (9th Cir. 1992)("in cases

13   where a voluminous fee application is filed," a district court

14   may use across-the-board percentage reductions but should

15   explain its reduction).  Other than to request all of her

16   attorneys' fees, plaintiff did not make an alternate

17   suggestion.

18        I am not satisfied that two thirds of the work done on

19   this case would have been eliminated had plaintiff not sued

20   Hintzen or the County, as defendants contend.  In fact,

21   defendants' expert opined that plaintiff's hours should be

22   reduced by one third to account for work done on Hintzen and

23   the County.  My personal review of the record suggests that

24   one quarter is closer to the mark.  The claim against Castro,

25   that she illegally seized the children, appears to have been

26   the lead claim.  Castro's conduct led to the conduct that

27   produced the other claims.  Much of the preparatory and

28   investigatory work would have overlapped for all three

1    defendants.  This is especially true of the extensive factual

2    development which this case required, not only for liability,

3    but also for damages.  For example, I have reviewed each

4    side's statement of facts filed as part of the summary

5    judgment process.  In defendants' motion, the statement of

6    facts occupies approximately 4 pages of which 2¾, or

7    approximately 70%, address the conduct which preceded the

8    seizure of the children.  In plaintiff's opposition, the

9    statement of facts covers approximately 9 pages, of which

10   approximately 6½ pages, or approximately 72%, address the

11   conduct which preceded the seizure of her children.

12       At oral argument, Ms. Kaminer stated that plaintiff would

13   have deposed Hintzen as a witness even if she was not a party

14   to the lawsuit.  Ms. Kaminer also stated that plaintiff would

15   have had to take the same number of depositions, save one

16   (Bogner), even if plaintiff had sued only Castro.  Defendants

17   would add another (Lee).  Clearly, the bulk of the depositions

18   would have been taken, even had only Castro been sued.

19       In addition, plaintiff is entitled to her attorneys' fees

20   for work done in connection with this motion.  Clark v. City

21   of Los Angeles, 803 F.2d 987, 992 (9th Cir. 1986).  Plaintiff

22   requests $40,087.63 for work done by Mr. Hicks and his

23   paralegal on this motion and over $20,000 for Ms. Kaminer's

24   and Mr. Pyle's time.  Ms. Kaminer claims 36.6 hours - 4.5

25   hours for work prior to the filing of this motion and 32.1

26   hours for work after, and Mr. Pyle claims 32.7 hours - 1.9

27   hours for work prior to the filing of this motion and 30.8

28   hours for work after.  Suppl. Decl. of Kaminer and Pyle.

1    However, plaintiff is not entitled to work spent on opposing

2    defendants' motion for attorneys' fees.  See Jensen v. City of

3    San Jose, 806 F.2d 899 (9th Cir. 1986).  Therefore, I

4    recommend deducting 17.5 hours for Ms. Kaminer and 14.2 hours

5    for Mr. Pyle for work spent opposing defendants' motion for

6    attorneys' fees.  This leaves 19.1 hours for Ms. Kaminer and

7    18.5 hours for Mr. Pyle.  Applying the recommended hourly

8    rates of $350 for Ms. Kaminer and $400 for Mr. Pyle, with no

9    enhancement, to these hours yields $6,685 for Ms. Kaminer's

10   fees and $7,400 for Mr. Pyle's fees.[4]

11        Mr. Hicks' updating declaration also improperly includes

12   tasks such as "assistance in [Ms. Kaminer's] opposition to the

13   defendants' fee motion."  Hicks Decl. Updating Fee Appl. 4:6;

14   4:20-23.  On the other hand, it appears that Mr. Hicks spent

15   the bulk of his time on this motion.  Ms. Kaminer, not Mr.

16   Hicks, drafted the opposition to defendants' motion and Mr.

17   Hicks did not submit any declarations for defendants' motion.

18   But because Mr. Hicks fails to include detailed timesheets, it

19   is difficult to calculate the hours and fees for his and his

20   paralegal's work which should be compensated.  This is

21   surprising from one who claims $520 per hour because he is

22   experienced in filing fee applications.  While the one

23   paragraph summary of his work probably satisfies Civil Local

24   Rule 54-6(b), it prevents the court from meaningfully

25   reviewing his claim.  From Ms. Kaminer's records, I can deduce

26

27        [4]    Plaintiff has provided no basis for enhancing the
     hourly rates for time spent on this motion and the court is
28   aware of none.

1  that she consulted with Mr. Hicks in opposing defendants'

2  motion for attorneys' fees.  While it is conceivable that Mr.

3  Hicks could have given such advice gratis, an attorney of his

4  experience should not leave the court in suspense on such an

5  issue.  Accordingly, I recommend that 5 hours (at an hourly

6  rate of $520, which would equal $2,600 in fees) be deducted

7  from Mr. Hicks' claim.  It is my best assessment of the amount

8  he would have spent in assisting plaintiff's counsel in

9  opposing defendants' motion.  I therefore recommend Mr. Hicks'

10  claim be reduced to $37,487.63 ($40,087.63 - $2,600.00)

11      Moreover, as with her application for fees for her

12  attorneys' work on the underlying case, plaintiff is not

13  entitled to compensation for all of the hours and work her

14  attorneys spent on this fee motion because she did not prevail

15  on all of her claims.  Therefore, I recommend cutting

16  plaintiff's attorneys' fees for work on this motion by 25%

17  overall, the same percentage I recommend for reducing

18  plaintiff's attorneys' fees for work on the underlying case.

19  See Schwarz v. Secretary of Health & Human Svcs., 73 F.3d 895,

20  909 (9th Cir. 1995)("a district court does not abuse its

21  discretion by applying the same percentage of merits fees

22  ultimately recovered to determine the proper amount of the

23  fees-on-fees award").

24      Finally, plaintiff has also included a request for costs

25  in her motion; these costs overlap with the bill of costs she

26  filed on March 13, 2006 [docket # 196].  This aspect of the

27  motion was not fully briefed, and defendants have requested

28  that this issue be resolved separately as the parties have

1 | filed separate motions and oppositions for taxation of costs

2 | [docket ## 194, 196, 197, 198 and 208].  I have therefore not

3 | included costs in plaintiff's attorneys' fees award.  I

4 | recommend that the Clerk be ordered to tax costs by August 11,

5 | 2006 and the parties make any objections and motions regarding

6 | the Clerk's taxation under Civil Local Rule 54 and in light of

7 | the court's guidance that plaintiff recover her fees only for

8 | those claims on which she prevailed.

9 |         Therefore, I recommend plaintiff's motion for attorneys'

10 | fees be **GRANTED IN PART and DENIED IN PART** as follows:

11 |         1.    that plaintiff be awarded attorneys' fees against

12 |               defendant Castro in the amount of **$456,436.04** as set

13 |               forth on the attached schedule;[5]

14 |         2.    that the Clerk of this court tax costs by **August 11,**

15 |               **2006** pursuant to Civil Local Rule 54; and

16 |         3.    that defendants' objections to plaintiff's evidence

17 |               be **OVERRULED**.  The bulk of defendants' objections go

18 |               to background evidence submitted by plaintiff, and

19 |               the qualifications and experience of plaintiff's

20 |               attorneys are relevant.  To the extent that any of

21 | ///

22 | ///

23 | ///

24 |

25 |

26 |         [5]    Although plaintiff asked that the award be against
the County, she has provided no authority for doing so.
Plaintiff's supplemental citations address the County's duty to

27 | pay for any judgment against Castro, which is distinct from an
entry of judgment against the County.  The court is unaware of

28 | any agreement for indemnification among these parties.

13

1          defendants' objections have any merit, they go to

2             the weight of the evidence.

3  Dated: July 31, 2006

4  _____
                    Bernard Zimmerman
5                    United States Magistrate Judge

6

7

8
   G:\BZALL\-REFS\FRANET\PLTFF.FEES.ORDER.4.wpd
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                            14